**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- X

**DIGNA RAMIREZ o/b/o**
**ROBEL RAMIREZ,**

                          Plaintiff,

   - against -

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

                          Defendant.

-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/29/09

**OPINION AND ORDER**

**08 Civ. 7609 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.      INTRODUCTION**

         Digna Ramirez, on behalf of her minor son, Robel Ramirez ("Robel"),

brings this action pursuant to the Social Security Act (the "Act"),[1] seeking judicial

review of a final decision by the Commissioner of Social Security (the

"Commissioner") denying her son's claim for Child Supplemental Security

Income ("SSI") benefits.  Ms. Ramirez moves under Federal Rule of Civil

Procedure 12(c) for judgment on the pleadings reversing the Commissioner's

---

[1]      *See* 42 U.S.C. § 405(g) ("section 405(g)").

1

determination due to a lack of substantial evidence. In the alternative, she requests remand so that the Commissioner may consider additional evidence submitted to this Court. The Commissioner cross-moves under Rule 12(c) to have his decision affirmed. For the reasons set forth below, Ms. Ramirez's motion is granted, and the Commissioner's cross-motion is denied.

## II.     BACKGROUND[2]

### A.     Procedural History

On August 19, 2005, Ms. Ramirez filed an application with the Social Security Administration (the "SSA") for SSI benefits on behalf of Robel.[3] The application alleged that Robel is entitled to SSI disability benefits due to learning disabilities.[4] After the application was initially denied,[5] Ms. Ramirez requested a hearing before an Administrative Law Judge ("ALJ").[6] On January 24, 2008, Ms.

---

[2]     Only facts regarding Robel's ability to "attend to and complete tasks" and "interact and relate with others" are relevant for purposes of this motion. *See* 20 C.F.R. § 416.924.

[3]     *See* Transcript of the Administrative Record ("Tr."), filed as part of the Commissioner's Answer pursuant to section 405(g), at 79.

[4]     *See id.* at 55. She also alleged that Robel had hearing and speech impairments, which are not at issue here. *See id.* at 85, 86.

[5]     *See id.* at 29, 52-55.

[6]     *See id.* at 49-51.

2

Ramirez, Robel, and his eighteen-year old brother, Alex Sanchez, testified at a

hearing before ALJ Kenneth L. Scheer.[7]

**B.      The Administrative Record**

The administrative record in this case consists of medical, consulting,

school, and personal records gathered by the SSA at the initial and ALJ hearing

levels, and testimony from the January 24, 2008 hearing.  Ms. Ramirez has also

submitted records from the New York City Board of Education ("NYCBE") to this

Court as "new and material evidence," pursuant to section 405(g).

**1.      Medical Evidence**

Private practitioner Dr. Chin Thapvongse has been Robel's treating

physician since he was two years old.[8]  His notes document Robel's inability to

read well, speech delays, and need for special education services.[9]

---

[7]      *See id.*

[8]      *See id*. at 227-252.

[9]      *See id*. at 228, 244.  Although the administrative record includes over
twenty pages of reports from Dr. Thapvongse, these are the only statements that
are both legible and relevant to the issues before this Court.  "It is the rule in our
circuit that the ALJ, unlike a judge in a trial, must . . . affirmatively develop the
record in light of the essentially non-adversarial nature of a [disability] benefits
proceeding, even if the claimant is represented by counsel." *Tejada v. Apfel*, 167
F.3d 770, 774 (2d Cir. 1999) (quotation marks and citations omitted).  If the
available "clinical records are inadequate, the ALJ has a duty to seek additional
information." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Accordingly, the

On April 19, 2002, school psychologist Rafael Alvarez performed an academic evaluation to determine Robel's appropriate academic placement.[10] He noted that "in response to difficult tasks, he gave up easily," and that he "quickly abandoned his efforts on tasks despite encouragement to continue attempts at completion."[11] He also noted that "Robel was easily distracted . . . and it was apparent that he did not have good attention and concentration skills."[12] Alvarez also reported that Robel "has low tolerance for frustration and this may cause him to be aggressive towards others."[13]

On October 13, 2005, certified speech and language pathologist Cristina Laureano, M.A., C.C.C., S.L.P., at Ms. Ramirez's request, examined Robel.[14] Although she reported that Robel could complete most tasks assigned to

---

ALJ sent subpoenas to Dr. Thapvongse on two separate occasions requesting more information and his presence at the hearing. *See* Tr. at 290-293, 227. Dr. Thapvongse did not respond to either subpoena, nor did he attend the hearing. *See id.* at 210.

[10]     Although part of the administrative record, this evidence was never acknowledged at the hearing or in the ALJ's explanation of his decision. *See id*. at 14-28, 302-322.

[11]     *Id*. at 174.

[12]     *Id.*

[13]     *Id.* at 176.

[14]     *See id*. at 191-194.

4

him, she noted that his overall communication was severely affected, with delays in most language components. Laureano assessed Robel's overall communication skills to be about five to six years below expected levels. He was not able to respond correctly to any questions asked after three paragraphs were read. He was disoriented to time, space, and place, and could not provide his biographical information in written or spoken forms, with the exception of his full name.[15]

On October 28, 2005, Dr. Alan Dubro, an examining physician for the SSA, conducted a psychiatric examination and nonverbal evaluation of Robel.[16] In both reports, Dr. Dubro noted that "results of [these] examination[s] are not consistent with [Ms. Ramirez's] allegations" that Robel was disabled."[17] He did, however, diagnose Robel with "learning disorder not otherwise specified."[18]

Records from the South Bronx Mental Health Council ("SBMHC") document Robel's psychological treatment between March and June 2006,[19] noting that Robel exhibited "major impairment in several areas, such as work or

---

[15]    *See id.*

[16]    *See id*. at 196-203.

[17]    *Id*. at 198, 202.

[18]    *Id*. at 198, 202-203.

[19]    *See id*. at 218-223.

5

school, family relations, judgment, [and] thinking."[20]  The reports also document problems of disruptive behavior, disrespectful behavior to others, hyperactivity, and self-isolation.[21]

### 2.    Consulting Examinations[22]

On January 18, 2006, Natalie Tomcho, a non-examining consulting certified speech and language pathologist for the SSA, assessed Robel's condition.[23]  She concluded Robel had a less-than-marked limitation in attending and completing tasks.[24]  Although she acknowledged a teacher's comment that "[Robel] is talkative in class and [gets] along with peers," she did not reach any conclusion regarding his ability to interact and relate with others.[25]

On January 19, 2006, Dr. Karen Prowda, a non-examining consulting physician for the SSA, assessed Robel's condition.[26]  She concluded that Robel

---

[20]    *Id*. at 220.

[21]    *See id*.  Although the ALJ briefly mentioned these documents at the hearing, he failed to acknowledge them in his decision to deny benefits.

[22]    In this case, consulting examinations were based solely on documentary reviews of the record.

[23]    *See* Tr. at 95-97.

[24]    *See id*. at 97.

[25]    *Id*. at 95-97.

[26]    *See id*. at 204.

had a less-than-marked limitation in his ability to attend and complete tasks,[27] and

had no limitation in his ability to interact and relate with others.[28]  She found

Robel's impairments to be severe,[29] but they did "not meet, medically equal, or

functionally equal the severity of a listing."[30]

### 3.    Teacher Reports[31]

On December 20, 2005, Robel's seventh grade special education

teacher, Carlita Prats, completed a teacher questionnaire requested by the SSA.[32]

With respect to attending and completing tasks,[33] she reported that Robel had an

"obvious" problem in the activities of:  paying attention when spoken to directly,

---

[27]    Dr. Prowda did, however, acknowledge that "school reports [indicate the] need for direction and assistance to complete tasks."  *Id.* at 206.

[28]    In support of this conclusion, Dr. Prowda noted that school reports indicated that Robel is respectful toward adults and that he gets along well with peers.  *See id.*

[29]    *See id.* at 204.

[30]    *Id.* at 209.

[31]    The record also contains reports completed by Robel's teachers for the academic years of 2005-2006 and 2007-2008.  *See id.* at 137-144, 146-153, 294-301.

[32]    *See id.* at 137-144, 146-153.  Prats wrote her report after working with Robel on a daily basis for eight months.  *See id.* at 146-153.

[33]    An earlier report dated July 2005 from another teacher briefly noted that Robel "does not complete his assignments."  *Id.* at 111.

waiting to take turns, and, changing from one activity to another without being

disruptive.[34]  She also stated that Robel had "serious" or "very serious" problems:

sustaining attention during play, focusing long enough to finish assigned activity

or tasks, carrying out single and multi-step instructions, completing homework

and class assignments, working without distracting himself or others, and working

at a reasonable pace.[35]  She commented that Robel "can't work independently,

[and] he needs extra help."[36]

   With respect to interacting with others, Prats assessed that Robel had

serious problems in:  playing cooperatively with other children, making and

keeping friends, seeking attention appropriately, expressing anger appropriately,

and introducing and maintaining relevant and appropriate topics of conversation.[37]

Prats completed another form in May 2006, where she again noted serious and

---

[34]   *Id*. at 139.  Prats' questionnaire asked her to compare Robel's
functioning to that of normal, same-aged children.  For each question regarding a
specific behavior, she selected a rating from a key that listed "no problem," "a
slight problem," "an obvious problem," "a serious problem," or a "very serious
problem," as possible answers. *See id.* at 146-153.

[35]   *See id*.

[36]   *Id*. at 138.

[37]   *See id.*

8

obvious problems with Robel's ability to stay on task and socialize with others.[38]

In February 2008, Robel's other special education and ESL teachers reiterated several of Prats' concerns.[39]  They commented on Robel's ability to complete tasks "despite additional support."[40]  They also recommended "counseling services to help Robel with his social and emotional needs."[41]

### 4.    New York City Board of Education Records[42]

NYCBE records document Robel's "serious" difficulties with speech and language and hyperactivity.[43]  One report noted that "Robel['s] deficit in all areas [of speech and language] are so great that his needs will not be met in a regular class."[44]  Robel scored in the mildly deficient range in the verbal IQ and in

---

[38]     *See id.* at 147-150.

[39]     *See id.* at 294-301.

[40]     *See id.* at 295-296, 301.

[41]     *Id.* at 57.

[42]     Robel has been receiving special education services since kindergarten. *See id.* at 173.

[43]     *See id.* at 111, 168, 169-171, 174.

[44]     *Id.* at 109.

9

the borderline deficient range for his full scale and performance IQ.[45]

### 5.    Family Evidence

In her SSI application, Ms. Ramirez indicated that Robel has a limited "ability to pay attention and stick with a task,"[46] displays both hostile and anti-social behavior towards family and friends,[47] and often talks to or fights with himself.[48]  She also reported that because of his "mental conditions," Robel cannot "carry a conversation normally" and that he sleeps with her so that "[she] can take care of him better."[49]  Ms. Ramirez also indicated that Robel had been seen by a psychologist and was taking medication.[50]

### 6.    Testimony

At the time of the hearing, Robel was fifteen years old and in the

---

[45]    *See id*. at 174-175.  Exact numerical scores were not disclosed in the record. *See id.* at 176.

[46]    *Id*. at 91.

[47]    *See id.* at 93.

[48]    *See id.*

[49]    *Id*. at 69-70.  Although Ms. Ramirez reiterated these points at the hearing, the ALJ did not acknowledge these allegations in his decision. *See id.* at 14-28.

[50]    *See id*. at 66-67.

ninth grade.[51]  The ALJ initially questioned Robel, whose responses were
incoherent,[52] confusing,[53] or did not correspond in subject matter to the questions
asked.[54]

        Ms. Ramirez testified that Robel had been enrolled in special
education since he was a young child,[55] had repeated a grade, and attended
summer school.[56]  At the age of fifteen, Robel still did not know how to read,
write, or do math.[57]  Ms. Ramirez still found it necessary to walk him to the school
bus every morning.[58]  She answered affirmatively when the ALJ asked whether
Robel had ever seen a therapist or a psychiatrist.[59]  Robel's brother Alex then

---

[51]    *See id.* at 305, 312.

[52]    *See id.* at 310-313.

[53]    *See id.*

[54]    When asked by the ALJ if he travels to school by himself, Robel
responded, "No, like, I've forgotten stuff."  *Id*. at 311.

[55]    *See id.* at 314-315.

[56]    *See id.* at 316.

[57]    *See id.*

[58]    *See id.* at 310-311, 316.

[59]    The transcript is unclear regarding this dialogue.  In response to the
ALJ's question of whether Robel had ever seen a therapist or psychiatrist, Ms.
Ramirez initially responded, "Yes, on 200 Street."  The ALJ then referred
specifically to the SBMHC records, but the dialogue was curtailed when Ms.

11

testified that he often had to assist his brother with his homework because Robel consistently had difficulty understanding the assignment and only ever "partially complete[d]" it.[60]

The ALJ then received into evidence all medical, school, and other written records assembled by the SSA at the initial levels of review.[61]

## 7.   The ALJ's Decision and Analysis

On March 28, 2008, the ALJ Scheer held that "[a]fter reviewing all of the evidence, [I conclude that Robel] [w]as not disabled within the meaning of the [SSA]."[62] Applying the analysis for determining whether a child is disabled,[63] the ALJ found that Robel was not engaged in substantial gainful activity and was suffering from a "severe" learning disorder, with speech/language delays.[64] Nonetheless, he found that this impairment did not meet or medically equal any

---

Ramirez's attorney explained that due to a stroke she had suffered in the past, Ms. Ramirez "may be having a problem here remembering."  *Id.* at 316.

   [60]   *Id.* at 320.

   [61]   *See id.* at 98-293.

   [62]   *Id.* at 20.

   [63]   *See* 20 C.F.R. § 416.924.  This analysis is further discussed in detail below.

   [64]   *See* Tr. at 23.

12

listed impairment.[65]

Finally, the ALJ concluded that the impairments did not "functionally equal" a disability.[66] He based this decision on his findings that Robel was markedly limited in his ability to acquire and use information, had a less-than-marked limitation in his ability to attend to and complete tasks, and had no limitations in his ability to interact and relate with others, move about and manipulate objects, care for himself, and maintain his health and physical well-being.[67]

In his overall analysis, the ALJ explained that he gave "significant weight" to the opinions of Dr. Dubro and Ms. Laureano because they were "supported by and consistent with the substantial evidence of record."[68]

---

[65]   See id.

[66]   See 20 C.F.R. § 416.924.

[67]   See id. § 416.924. The ALJ supported these conclusions by stating only that "the record does not establish limitations in [these domains] of function." See Tr. at 26. The parties do not dispute the ALJ's findings that Robel had no limitations in the following domains: moving about and manipulating objects, caring for himself, and health and physical well-being. They also do not dispute the ALJ's findings that Robel had a marked limitation in the domain of acquiring and using information.

[68]   Id. at 23.

13

In his discussion of Robel's ability to attend to and complete tasks,[69]

the ALJ explained that Robel has moderately impaired attention and concentration

skills.[70] He also stated that Robel has difficulty understanding his homework.[71] In

support of this finding, the ALJ cited Dr. Dubro's statement "that [Robel] is

capable of attending to age-appropriate directions and completing age appropriate

tasks,"[72] and Laureano's remark that Robel "was attentive and participated in tasks

during his evaluation with minimal level of cues."[73] Without any elaboration, the

---

[69]     The domain of attending and completing tasks gauges how well a
child can focus and maintain attention. *See* 20 C.F.R. § 416.926a(h). Examples of
limited functioning in this domain include: (1) being easily startled, distracted, or
over-reactive to stimuli that would not affect a normal child; (2) being slow to
focus on, or fail to complete activities of interest; (3) being easily sidetracked from
activities or frequently interrupting others; (4) getting easily frustrated and
frequently giving up on tasks; (5) requiring extra supervision to keep engaged in
an activity. *See id.* § 416.926a(h)(3)(i)-(v). The ALJ noted that Robel has
"moderately impaired attention and concentration skills" and also "has difficulty
understanding his homework assignments." Tr. at 25.

[70]     Prior to this statement, the ALJ explicitly stated that a child without
an impairment in this area should be able to maintain concentration and attention
on a task for extended periods of time, be able to complete school assignments,
and not be unduly distracted by peers or unduly distracting to them in a school
setting. *See id.* at 25.

[71]     *See id.*

[72]     *Id.* at 202.

[73]     *Id.* at 193. The ALJ did not address Laureano's statements regarding
Robel's "severely affected overall communication," "inability to respond correctly
to any questions after three paragraphs were read," disorientation to time, space,

14

ALJ also cited Robel's teacher reports.[74]

The ALJ then explained his decision regarding Robel's ability to interact and relate with others using one sentence: "the record does not establish limitations in this domain of functioning."[75]  Without further elaboration, he then cited the school records[76] and Dr. Dubro's notes.[77]

The ALJ's decision became the final decision of the Commissioner on June 26, 2008, when the Appeals Council denied Ms. Ramirez's request for review of the ALJ's decision.[78]  This action followed.

### C.   Additional Evidence

---

and place and inability to provide biographic information.  *See id.*

[74]   *See id.* at 145-189.  The ALJ did not address any teachers' statements regarding Robel's "serious" and "obvious" problems in this domain.

[75]   *Id.* at 26.  The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  *See* 20 C.F.R. § 416.926a(i).

[76]   *See* Tr. at 98-119, 145-189.

[77]   *See id.* at 200-203.  The ALJ did note, however, that a child with limited functioning in this area has difficulty communicating with others, speaking intelligibly or with adequate fluency.  *See id.* at 26.  The school reports he cites to in this section state that Robel experiences such difficulties.

[78]   *See id.* at 3-6.

Ms. Ramirez submitted to this Court a bilingual psycho-educational

evaluation, dated June 4, 2008, as "new and material" evidence.[79] That evaluation

stated, "Robel has a difficult time making friends, is rated 'poor' with group

participation, and is not always 'willing to share' . . . . he needs help with

academic endeavors and g[ives] an impression of being 'lost' in relation to

school."[80]

## III. LEGAL STANDARD

### A. Substantial Evidence

When examining the ALJ's decision in a disability benefits case,

"'[i]t is not [this Court's] function to determine *de novo* whether [plaintiff] is

disabled.'"[81] Although the ALJ must set forth the crucial factors supporting his

decision with sufficient specificity,[82] a district court must not disturb the ALJ's

decision if "correct legal standards were applied" and "substantial evidence

---

[79]    *See* 6/4/08 Bilingual Evaluation, Appendix A to 5/7/09 Memorandum
of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.
Mem.").

[80]    *Id.* at 3.

[81]    *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citing *Pratts v.
Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). *Accord Halloran v. Barnhart*, 362 F.3d
28, 31 (2d Cir. 2004).

[82]    *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

supports the decision."[83] "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[84]

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."[85] Even if there is also substantial evidence for the plaintiff's position, if substantial evidence exists to support the Commissioner's decision, the decision must be affirmed.[86] Moreover, the Commissioner's findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence might differ from the Commissioner's analysis.[87]

## B.    SSA Regulations for Defining Childhood Disability

---

[83]    *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). *Accord Halloran*, 362 F.3d at 31.

[84]    *Halloran*, 362 F.3d at 31 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). *Accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

[85]    *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

[86]    *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). *Accord Morillo v. Apfel*, 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001)

[87]    *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

17

The Commissioner has established a multi-step evaluation process for determining whether a child is disabled.[88]  At Step One, the Commissioner determines whether the child is engaged in "substantial gainful activity."[89]  If so, the claim is denied.  If not, the claim proceeds to Step Two, where the Commissioner screens out *de minimis* claims, *i.e.*, those in which the child lacks a severe impairment.[90]  At Step Three, the Commissioner determines whether the child's impairment(s) "meet, medically equal, or functionally equal a [listed impairment]."[91]  If so, the claim is accepted; if not, it is denied.[92]

Functional equivalence examines how a child's impairment(s) affect the following domains of functioning:[93] (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and

---

[88]     *See* 20 C.F.R. § 416.924.

[89]     *Id.* § 416.924(a), (b).

[90]     *See id*. § 416.924(c).

[91]     *Id*. § 416.924(d).

[92]     *See id.*

[93]     *Id.* § 416.924(a).

18

physical well-being.[94]  For each domain, the Commissioner determines whether

the degree of limitation, if any, qualifies as "marked"[95] or "extreme."[96]  If a child

has a marked limitation in two domains or an extreme limitation in one domain,

the child is considered disabled by the SSA.[97]

## C.    Relevant Evidence

"When [the ALJ] make[s] a determination or decision of disability,

[he] will consider all of the available evidence in the individual's case record."[98]

The ALJ must therefore consider information from both medical and non-medical

sources.[99]

---

[94]    *Id.* § 416.924a(b)(1)(i-vi); *see also Encarnacion v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009) (upholding Commissioner's interpretation of functional equivalence regulations).

[95]    An impairment is "marked" if it "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).

[96]    An impairment is "extreme" if it "interferes *very* seriously with [a child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3)(i) (emphasis added).

[97]    The child's impairment is therefore "functionally equivalent" in severity to a listed impairment.  *Id.* § 416.924a(a).

[98]    Titles II, XVI:II and XVI of the Social Security Ruling: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims ("SSR 06-03P"), 2006 WL 2329939 (Aug. 9, 2006).

[99]    *See id.*

### 1.    Medical Sources[100]

When a treating physician has obtained a "longitudinal picture of [the

child's] impairment, [the SSA] will give the source's opinion more weight than []

if it were from a non-treating physician."[101]  The regulations state:

> Generally, we give more weight to opinions from your
> treating sources, since these sources are likely to be the
> medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence
> that cannot be obtained from the objective medical findings
> alone or from reports of individual examinations, such as
> consult[ing] examinations or brief hospitalizations.[102]

The regulations set out factors to be considered in weighing medical opinions

from treating sources, non-treating sources, and non-examining sources.  These

factors include:  the treatment relationship between the individual and a treating

source (i.e. the length, nature, extent, and frequency of examination); the degree to

which the "acceptable medical source" presents an explanation and relevant

evidence, including medical signs and laboratory findings, to support an opinion;

---

[100]    "Acceptable medical sources" include licensed physicians, licensed
psychologists, and qualified speech-language pathologists.  See id.

[101]    20 C.F.R. §  416.927(d)(2)(i).

[102]    Id. §  416.927(d)(2) (emphasis added).

and how consistent the medical opinion is with the record as a whole.[103]

The regulations also require consideration of "unusual settings," such as an unfamiliar setting or a one-on-one setting, where the child may function differently than he does in his usual settings.[104]  In these unusual settings, the ALJ will not "draw inferences about [a child's] functioning in other situations based only on how you function in a one-to-one, new, or unusual situation."[105]

### 2.    Non-Medical Sources

The ALJ's interpretation of findings by any medical source should reflect consideration of non-medical information from the child's teachers, therapists, parents, siblings or other people who know the child.[106]  Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time.[107]

An opinion from a non-medical source may, under certain

---

[103]    *See* SSR 06-03P.

[104]    *See* 20 C.F.R. § 416.924a(a)(6).

[105]    *Id.*

[106]    *See id.* § 416.924a(1)(iii).

[107]    *Id.* § 416.924a(2).

21

circumstances, properly be determined to outweigh the opinion from a medical

source. This may occur if the non-medical source has seen the child more often

and has greater knowledge of his functioning over time, and if the non-medical

source's opinion has better supporting evidence and is more consistent with the

evidence as a whole.[108]

### D.     Evaluating the Evidence

If a child has more than one impairment in a particular domain, the

ALJ is to "look comprehensively at the combined effects of [the child's]

impairments on [his or her] day-to-day functioning instead of considering the

limitations resulting from each impairment separately."[109] This approach permits

the combined effects of multiple impairments to be considered in determining the

total level of a child's limitation in a particular domain of functioning.[110]

Although a child needs two marked limitations or one extreme

limitation to qualify for benefits, the SSA must also consider less-than-marked

---

[108]    *See* SSR 06-03P.

[109]    20 C.F.R. § 416.924a(b)(4).

[110]    *See id.* This approach is flexible and inclusive to avoid concerns
raised by the Supreme Court in *Sullivan v. Zebley*, 493 U.S. 521 (1990)
(invalidating former SSA practice of determining childhood disability claims by
only referencing certain listed impairments without regard to cumulative effect on
childhood functioning).

limitations.[111]  An ALJ cannot simply assign a less-than-marked limitation "zero

weight in the ultimate decision whether or not to award benefits."[112]  Instead,

"each of a child SSI claimant's impairments must be taken into account in SSA's

bottom-line assessment of the child's disability."[113]  Accordingly, courts have

permitted a finding of one marked impairment and one moderate impairment to

equate to a finding of disability, although this is not necessarily an automatic

conclusion.[114]

### E.   Standards for Remand

A district court may affirm, reverse, or modify the Commissioner's

final decision.[115]  Remand is warranted where the ALJ has based a determination

on an improper legal standard or if further development of the record is necessary

to fill in evidentiary gaps.[116]  A remand pursuant to sentence six of section 405(g),

---

[111]    *See Encarnacion v. Barnhart*, 331 F.3d 78, 90 (2d Cir. 2003) ("[T]he
Act appears to require that each of the claimant's impairments be given at least
some effect during each step of the disability determination process.").

[112]    *Id.*

[113]    *Id.* at 92.

[114]    *See Quinones v. Chater*, 117 F.3d 29, 36-37 (2d Cir. 1997)
(commenting on the guidelines set forth in 20 C.F.R. § 416.924e(a)).

[115]    *See* Section 405(g); *Butts*, 388 F.3d at 385.

[116]    *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

as Ms. Ramirez has requested in the alternative, is warranted only if new, non-

cumulative evidence proffered to the district court should be considered at the

administrative level.[117]

Remand is also appropriate if the ALJ's rationale could be rendered

more intelligible through further findings or a more complete explanation.[118]

Failure to specify the basis for a conclusion as to functional capacity is reason

enough to remand a decision.[119]  The Commissioner has a duty to provide a

plaintiff with a clear statement of the reasons for his decision,[120] and must explain

the weight he gave to medical and non-medical opinions to allow a subsequent

reviewer to follow his reasoning.[121]

The reviewing court must keep in mind that "[t]he Act must be

---

[117]    *See Lisa v. Secretary of Dep't of Health and Human Servs.*, 940 F.2d
40, 43 (2d Cir. 1991). *See also Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)
(holding that to justify remand, plaintiff must demonstrate that the proffered
evidence is new and not merely cumulative of evidence already in the record).

[118]    *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

[119]    *See White v. Secretary of Dep't Health and Human Servs.*, 910 F.2d
64, 65 (2d Cir. 1990) (holding that failure to adequately specify bases for
conclusions regarding functioning capacity is sufficient grounds for remand).

[120]    *See, e.g., Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)
("it is an elementary rule that the propriety of agency action must be evaluated on
the basis of stated reason").

[121]    *See* SSR 06-03P.

liberally applied, for it is a remedial statute intended to include, not exclude."[122]

Nonetheless, "'[r]eversal and entry of judgment for the claimant is appropriate

only when the record provides persuasive proof of disability and a remand for

further evidentiary proceedings would serve no purpose.'"[123]

## IV.   DISCUSSION

### A.   The Parties' Contentions

*First*, Ms. Ramirez claims that the ALJ's decision to deny Robel

benefits was not supported by substantial evidence because he "relied solely upon

the opinions of the consulting examiners [Dr. Dubro, Laureano, Dr. Prowda, and

Tomcho]."[124]  *Second*, she claims that "the rationale for the ALJ's decision is

unintelligible."[125]  *Third*, Ms. Ramirez asserts that the June 4, 2008 bilingual

psycho-educational evaluation of Robel should properly be admitted as new and

---

[122]    *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

[123]    *Pimentel v. Barnhart*, No. 04 Civ. 3769, 2006 WL 2013015, at *8
(S.D.N.Y. July 19, 2006) (quoting *Cruz ex rel. Vega v. Barnhart*, No. 04 Civ.
9794, 2005 WL 2010152, at *8 (S.D.N.Y. Aug. 23, 2005), *modified on other
grounds on reconsideration*, 2006 WL 547681 (S.D.N.Y. Mar. 7, 2006)).  *Accord
Butts*, 388 F.3d at 386.

[124]    Pl. Mem. at 6.

[125]    *Id.*

material evidence in support of her request for remand.[126]

The Commissioner contends that substantial evidence supports the ALJ's decision.[127]   Accordingly, he asks that the decision denying benefits be affirmed.

## B.   The ALJ's Development of the Record

At Step One, the ALJ properly found that Robel was not engaged in gainful employment.[128]  At Step Two, the ALJ concluded that Robel had a learning disorder with speech and language delays – severe impairments that imposed more than minimal or slight limitations on his ability to function.[129]  At Step Three, the ALJ found that these impairments did not meet or medically equal the requirements of any listed impairment.  He also determined Robel's impairments were not functionally equivalent to such a listed impairment.[130]

In this case, the ALJ was unable to attain a treating physician's

---

[126]    *See id.* at 8.

[127]    *See* 6/24/09 Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings at 18.

[128]    *See* Tr. at 23.

[129]    *See id.*

[130]    *See id.* at 23-28.

opinion regarding Robel's functional capacity in the two domains at issue. Consequently, the ALJ was left with a mass of psychological, consulting, speech and language, educational, and subjective records.  Notwithstanding the lack of Dr. Thapvongse's opinion, the administrative record was replete with evidence suggesting serious to severe problems in Robel's abilities of attending to and completing tasks and interacting and relating with others.

The critical question before the Court is whether substantial evidence supports the ALJ's conclusions that Robel had a less-than-marked limitation in his ability to attend and complete tasks and no limitation in his ability to interact and relate with others.  Because the ALJ concluded that Robel had at least one marked limitation, a finding that Robel had a marked limitation in either of these domains would have satisfied the requirements for disability under the regulations.

## 1.    Weighing the Evidence

In his analysis, the ALJ failed to address whether the one-time examinations of Dr. Dubro and Ms. Laureano may have been conducted in "unusual settings," which may have affected the inferences he was permitted to draw about Robel's functioning in other situations.[131]  Instead, the ALJ gave "significant weight" to their opinions without any reference as to what other

---

[131]      *See* 20 C.F.R. § 416.924a(a)(6).

evidence in the record supported their opinions.  There is no discussion of why the

ALJ afforded such significant weight to their opinions over other treating and non-

treating opinions offered in the record.

Specifically, the ALJ failed to give proper weight to the reports of

those who had a substantial longitudinal picture of Robel's functional

limitations.[132]  In his explanation of the two relevant domains, the ALJ did not

reference any SBMHC records, which should have held significant weight as a

treating medical source.  He also failed to adequately discuss the evidence

provided by Robel's teachers[133] and the testimony of his family members provided

at the hearing.  These records provided substantial evidence of Robel's serious

problems in the domains of attending and completing tasks and interacting and

relating with others.

The ALJ also conceded that Robel had the following multiple

impairments in the domain of attending and completing tasks: (1) impaired

attention, (2) impaired concentration skills, and (3) difficulty understanding

---

[132]     *See* 20 C.F.R. § 416.927(d).

[133]     *See Quinones*, 117 F.3d at 35 (where physicians' reports did not, by
themselves, amount to "substantial evidence" supporting the Commissioner's
findings when measured "against reports of [plaintiff's] teachers, who dealt with
[plaintiff] on a daily basis over at least a school year").

homework assignments. He did not explain, however, why these multiple

impairments within the single domain of attending to and completing tasks did

not, in the aggregate, meet the criteria of a marked limitation.

With regard to his conclusion that Robel exhibited no limitation in his

ability to interact and relate to others, the ALJ provided little rationale and cited

contradictory evidence.[134] He cited to multiple documents that explicitly indicated

that Robel had "very serious" problems in the domain of interacting and relating

with others on a daily basis.[135] Despite the existence of evidence in support of a

marked limitation in this domain,[136] the ALJ concluded otherwise, without any

explanation.

The teacher reports were corroborated by the sworn testimony of Ms.

Ramirez and Alex Sanchez, and the documents from the SBMHC, Laureano,

Alvarez, and Dr. Prowda. On the other hand, there was virtually no corroboration

---

[134]     To support his finding that "the record does not establish limitations
in this domain of functioning," the ALJ cited Robel's teacher reports, which
indicate that Robel has "very serious" problems in this domain. *See* Tr. at 26, 149.

[135]     *See id*. at 149-150.

[136]     The record notes Robel's difficulties playing cooperatively with
others, making friends, seeking attention appropriately, and relating experiences
and telling stories to others. *See id*. at 140. The SBMHC records emphasized his
disruptive behavior and self-isolation. *See id*. at 220, 222. Tomcho, the SSA-
appointed pathologist, also suggested possible marked limitations in this domain.
*See id*. at 194.

for the findings that Robel had a less-than-marked limitation in the domain of
attending and completing tasks and no limitation in his ability to interact and
relate with others.  The only corroboration came in the form of medical opinions
based on consulting examinations.[137]

In sum, I find that the ALJ did not properly weigh all of the evidence
in the administrative record, and that his findings regarding the domains in issue
were not supported by substantial evidence.[138]  Accordingly, Robel's case must be
remanded to the SSA for proceedings consistent with this Opinion and Order.

## V.   CONCLUSION[139]

---

[137]   *See id.* at 19-22.

[138]   Although the ALJ need not mention every item of testimony, remand
is necessary where a reviewing court "would be unable to fathom the ALJ's
rationale in relation to evidence in the record, especially where credibility
determinations and inference drawing is required of the ALJ.  In such instances,
[the Court] would not hesitate to remand the case for further findings or a clearer
explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.
1982). *Accord Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (holding that
the ALJ must provide "sufficient specificity" to enable a reviewing court to
determine if the decision is supported by substantial evidence); SSR 06-03P.

[139]   The additional evidence (the 6/4/08 Bilingual Evaluation) submitted
by Ms. Ramirez to this Court is not a sufficient basis for remand.  The evaluation
reiterates Robel's difficulty with mathematics, the identification of shapes and
colors, and the reporting of biographical information.  Therefore, the result only
corroborates the undisputed finding that Robel is markedly limited in his ability to
acquire and use information.  Because this evidence is cumulative of the existing
record, it is not sufficiently new and material to warrant a sentence six remand.
Accordingly, sentence six of section 405(g) is not controlling.  The Court instead

In light of the foregoing, upon remand, the ALJ must re-evaluate Robel's functional equivalence with regard to the following domains: attending and completing tasks and interacting and relating with others. Upon further review, the ALJ must take into account the complete record, including all medical and non-medical sources. Furthermore, if the ALJ chooses to give controlling weight to certain sources, the ALJ must provide a reasonable explanation for doing so. The ALJ must also provide a reasonable basis why the multiple impairments within the domain of attending to and completing tasks did not, in the aggregate, rise to the level of a marked limitation. Lastly, the ALJ must explain his finding in further detail regarding Robel's functioning in the domain of interacting and relating with others.

Accordingly, Ms. Ramirez's motion to remand this matter is granted so that the ALJ may reconsider the record and provide further explanations for the particular findings and conclusions described above. The Commissioner's cross-motion for judgment on the pleadings is denied. The Clerk of the Court is directed to close this motion [Docket No. 6]. The parties are hereby directed to notify

---

remands the case because of the ALJ's failure to adequately specify the bases for his conclusions regarding Robel's functioning in the two domains in controversy. *See White*, 910 F.2d at 65.

31

Chambers once the ALJ provides the requested explanations.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 29, 2009

32

## - Appearances -

**For Plaintiff:**

Nelson Mar, Esq.
Legal Services NYC – Bronx
579 Courtlandt Avenue
Bronx, New York 10451
(718) 928-3756

**For Defendant:**

Susan Baird
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2713